JOHN S. GIBSON (Bar No. 140647)
*john.gibson@us.dlapiper.com*
JUSTIN ILHWAN PARK (Bar No. 250220)
*justin.park@us.dlapiper.com*
MICHAEL T. BOARDMAN (Bar No. 279153)
*michael.boardman@us.dlapiper.com*
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel:   310.595.3000
Fax:   310.595.3300

Attorneys for Plaintiff
CJ FRESHWAY AMERICA CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CJ FRESHWAY AMERICA CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>MESHQUAT INTERNATIONAL TRADING COMPANY, LLC, a Massachusetts limited liability company; ALI OWNEJAZAYERI, an individual; and DOES 1 to 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>**PLAINTIFF CJ FRESHWAY AMERICA CORPORATION'S COMPLAINT AGAINST MESHQUAT INTERNATIONAL TRADING COMPANY, LLC FOR:**<br><br>1. Fraudulent Misrepresentations<br>2. Fraudulent Concealment<br>3. Aiding and Abetting Fraud<br>4. Violation of 18 USC § 1962(d)<br>5. Breach of Contract<br>6. Breach of Implied Covenant of Good Faith and Fair Dealing<br>7. Conversion<br>8. Unjust Enrichment<br>9. Violation of Cal. Business & Professions Code section 17200<br>10. Account Stated<br>11. Open Book Account<br>12. Violation of Cal. Penal Code 496(c)<br><br>**Demand for a Jury Trial** |

EAST\185745635.1

PLAINTIFF CJ FRESHWAY AMERICA CORPORATION'S COMPLAINT AGAINST MESHQUAT
INTERNATIONAL TRADING COMPANY, LLC AND ALI OWNEJAZAYERI

Plaintiff CJ Freshway America Corporation (hereinafter "CJ Freshway" or "Plaintiff") alleges as follows:

## INTRODUCTION

1.      This action arises out of Defendants' scheme to defraud Plaintiff CJ Freshway into paying for seafood products that Defendants never intended to deliver.  To effectuate this scheme, Defendants Meshquat International Trading Company, LLC's ("Meshquat") and Ali Ownejazayeri's ("Ownejazayeri") made fraudulent misrepresentations, committed wire and mail fraud, and bribed an employee of Plaintiff CJ Freshway to generate fraudulent invoices and arrange for payments on them from CJ Freshway to Defendants Meshquat and Ownejazayeri over the course of multiple months.  Ultimately, Defendants Meshquat and Ownejazayeri's scheme resulted in Plaintiff CJ Freshway transferring over $1,000,000 to Defendants Meshquat and Ownejazayeri who did not deliver the promised products and have refused to return the funds.

## PARTIES

2.      Plaintiff CJ Freshway was and, at all relevant times herein mentioned, is a corporation organized and existing under the laws of the State of California, which maintains its principal place of business at 5700 Wilshire Blvd., Suite 540, Los Angeles, CA 90036.

3.      Defendant Meshquat is and, at all relevant times herein mentioned, was a corporation organized and existing under the laws of the State of Massachusetts, which maintains its principal place of business at 307 Greene St, North Andover, MA 01845.

4.      Defendant Ownejazayeri is and, at all relevant times herein mentioned, was an individual residing in Massachusetts.  On information and belief, Defendant Ownejazayeri is the principal and president of Meshquat.

5.      CJ Freshway does not know the true names and capacities of Defendants sued herein as DOES 1 through 10 and therefore sues these Defendants

1  by such fictitious names.  CJ Freshway will amend the Complaint to identify the

2  true names and capacities of DOES 1 through 10 when ascertained.

3        6.      Defendants Meshquat, Ownejazayeri, and Does 1 through 10, inclusive,

4  are sometimes referred to herein as individually as a "Defendant" and collectively

5  "Defendants."

6        7.      CJ Freshway is informed and believes and thereon alleges that at all

7  times mentioned herein, Defendants, and each of them, were agents, alter egos,

8  partners, and joint venturers of each of the other Defendants, and in doing the things

9  herein alleged, each of them were acting within the course and scope of their

10  agency, alter ego, partnership, and joint venture, thereby rendering each Defendant

11  legally responsible for the acts, omissions, breaches and other conduct of each

12  remaining Defendant. CJ Freshway is further informed and believes and thereon

13  alleges that each Defendant ratified the acts and omissions outlined herein, by,

14  among other things, accepting the fruits and benefit of such acts and omissions with

15  the knowledge that such fruits and benefits flowed directly from such acts and

16  omissions.  Each of the Defendant's acts alleged herein was done with the

17  permission and consent of each of the other Defendant.  CJ Freshway is informed

18  and believes and thereon alleges that each Defendant is the alter ego of each other

19  Defendant. At all times relevant hereto, Meshquat was the alter ego of

20  Ownejazayeri, and there exists, and at all times herein mentioned has existed, a

21  unity of interest and ownership between Meshquat and Ownejazayeri that any

22  separateness between them has ceased to exist in that Ownejazayeri completely

23  controlled, dominated, managed, and operated Meshquat to suit his convenience.

24        8.      Specifically, at all times relevant hereto, CJ Freshway is informed and

25  believes Ownejazayeri (1) controlled the business and affairs of Meshquat; (2)

26  commingled the funds and assets of the corporate entities, and diverted corporate

27  funds and assets for his own personal use; (3) disregarded legal formalities and

28  failed to maintain arm's length relationships among the corporate entities; (4)

-2-

inadequately capitalized Meshquat; (5) used the same office or business location (his residence); (6) used the corporate entities as mere shells, instrumentalities or conduits for himself and/or his individual business; (7) used the corporate entities for the sole purpose of receiving illegal monies for another person or entities; and (8) used corporate accounts as his personal funds to pay personal debts.

9.      There is a unity of interest and ownership between Defendants, Defendants have disregarded required formalities, and Defendants have advanced their own personal purposes. Moreover, an inequitable result would follow if Defendants were not held liable for the obligations of each Defendant as set forth in this Complaint. By acting on behalf of each other as alleged herein, Defendants effectively acted as the alter ego of each other and in their personal capacity as well. Accordingly, there is no legal distinction between Defendants, and each Defendant may be held personally liable for any liability incurred by any other Defendant.

## VENUE AND JURISDICTION

10.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties to this civil action are citizens of different States, and the matter in controversy exceeds $75,000.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

12.      CJ Freshway is a company that specializes in the import/export, distribution, and servicing of food products such as seafood, fruits, and nuts.

13.      CJ Freshway was established in Los Angeles, California in or around 2013 to operate a food import and export business in the United States.

### Defendants and CJ Freshway Employee, Minho Lim,
### Form and Operate a Scheme to Defraud CJ Freshway

14.      Defendants and CJ Freshway first began a business relationship as

supplier and purchaser in or around June 2017.  Initially, CJ Freshway and Meshquat agreed that CJ Freshway would pay 30% of the purchase price as advance payment and the remaining 70% upon receiving the bill of lading after the goods have been shipped, or after FDA approval depending on the transactions (the "Meshquat Agreement"). The payment was split into two phases so that CJ Freshway's damages would be mitigated as a buyer if Meshquat for any reason failed to honor the purchase orders.

15.     Less than a year later, however, Defendants orchestrated and participated in a scheme with Minho Lim ("Lim") – an employee of CJ Freshway – to defraud CJ Freshway into making significant advance payments for goods that Defendants would not ship.  In furtherance of this scheme, Lim changed the terms of the Meshquat Agreement in or about April 2018, increasing the advance payment from 30% to 50% and shifting risk to CJ Freshway.

16.     For its part, and in exchange for Lim's changing the terms of the Meshquat Agreement, Meshquat secretly paid Lim a kickback of approximately $10,000 per container.  Meshquat then began to skip shipments for some of the purchase orders placed by CJ Freshway, even though it was receiving higher upfront payments, simply pocketing the advance payments.  To keep the scheme going, Defendants unlawfully paid Lim $453,000 in such bribes and kickbacks within a year, which Lim funneled through two shell entities controlled by him and his mother, Kaldea, Inc. and N9 Int'l Trading, Inc.

## The Fraudulent Purchase Orders

17.     Not content with their scheme to pocket money for orders that it could potentially ship, but did not intend to ship, Defendants also created and submitted to CJ Freshway entirely fake invoices and bills of lading for products that did not exist at all.

18.     For example, on or around March 26, 2018, Defendants fabricated a fake bill of lading for purchase order 1586 ("P/O 1586") representing it to be an

original bill of lading for P/O 1586 ("1586 BL") from Hyundai Merchant Marine Co., Ltd. ("HMM"). Lim then submitted this fake bill of lading to the CJ Freshway accounting team, even though he knew or should have known that it was fabricated, and caused CJ Freshway to make a remaining payment of $75,067.

19.     In order to hide Defendants' fraudulent scheme from CJ Freshway and to protect his kickbacks from Defendants, Lim made sure that CJ Freshway was unaware that the goods listed in P/O 1586 had never been shipped. When CJ Freshway followed up with Lim on the status of the deliveries, Lim made misrepresentations that the goods were delayed due to severe weather conditions from the departing port and that the ordered goods would arrive shortly. These statements were false. Indeed, HMM has since confirmed that the 1586 BL was fake and never created and/or sent by the shipping company. To date no goods relating to P/O 1586 have been received by CJ Freshway, and as a result, Defendants received $165,067.50 for goods that were never shipped.

20.     Defendants then continued to submit false and fraudulent invoices and bills of lading. On or around March 26, 2018, Lim placed another purchase order ("P/O 1585") with Meshquat for CJ Freshway to make the advance payment of $90,000 on or around April 5, 2018. The container ship onto which the goods for P/O 1585 were purportedly loaded never left the port due to severe weather conditions, meaning that the shipping company could not have issued and/or sent the original bill of lading to CJ Freshway. But on or around May 31, 2018, Defendants fabricated another bill of lading and sent to it Lim. Lim then represented to the CJ Freshway accounting team that this fraudulent bill of lading was in fact an original bill of lading for P/O 1585 from Pacific International Lines, Ltd. ("PIL") and caused CJ Freshway to make the remaining payment of $75,067.50. CJ Freshway has since confirmed with PIL that the bill of lading that Lim submitted had nothing to do with the purchase order or shipment.

21.     On or around July 23, 2018, months later than the agreed upon delivery

1    date under P/O 1585, the goods that Lim represented to be covered by that order

2    were delivered. The volume of goods received, however, was less than indicated in

3    P/O 1585 and amounted to $94,486.14, which was $70,581.36 less than the

4    $165,067.50 that Lim caused CJ Freshway to pay Meshquat. When the accounting

5    department of CJ Freshway inquired with Lim about the discrepancy between the

6    amount for which CJ Freshway paid and the goods actually received, Lim attempted

7    to conceal his misconduct by making further misrepresentations that everything

8    would be accounted for in future shipments. No further shipments pertaining to P/O

9    1585 were received, however. As a result, Defendants' fraudulent scheme caused

10   Meshquat to receive $70,581.36 in excess of the amount to which it was entitled,

11   while Lim received thousands of dollars in kickbacks and bribes to secure those

12   payments to Defendants.

13       22.    In total, CJ Freshway as the buyer entered into twelve (12) purchase

14   order agreements (hereinafter collectively as "Purchase Orders" or "Agreements" or

15   "POs") with Meshquat as the seller to purchase seafood products, between March of

16   2018 and August of 2018 in connection with the Defendants' and Lim's fraudulent

17   scheme.

18       23.    CJ Freshway made advance payments on those Purchase Orders, but

19   Defendants have not delivered any seafood in connection with the Purchase Orders,

20   causing damage to CJ Freshway.  On September 14, 2018 and on numerous other

21   occasions, CJ Freshway sent notices to Defendants demanding the return of all

22   advance payments pertaining to the Purchase Orders that were never fulfilled,

23   thereby cancelling the Agreements.

24       24.    Defendants to date have also not returned any of the advance payments

25   paid in connection with the Agreements.

26       25.    Defendants still owe CJ Freshway an unpaid principal balance in the

27   amount of no less than $1,092,070 plus interest and costs. Interest and costs

28

continue to accrue in the amount of no less than $327,000 with 10% prejudgment interest.

**CJ Freshway Learns that Lim Lied to Its Audit Team and Grossly Under Reported the Amount He Received from Meshquat**

26.     CJ Freshway eventually discovered that it was not receiving goods as Defendants had promised and initiated an audit.  Although Lim signed a sworn affidavit during the audit that he received no more than $100K from Meshquat and $55K from another vendor, MiCal, bank statements from Lim, Kaldea and N9 show that Lim actually received over $430,000 from Meshquat alone, as follows:

|  | CJ Freshway to Meshquat | Meshquat to Kaldea (Lim) |
|---|---|---|
| 10/20/2017 | $73,147.50 | $2,546.40 |
| 11/10/2017 | $52,060.53 | $6,342.34 |
| 11/13/2017 | $156,449.00 | $7,380.68 |
| 11/14/2017 | $21,266.70 | $19,535.23 |
| 11/27/2017 | $27,328.60 | $1,379.95 |
| 11/29/2017 | $67,824.33 | $8,455.79 |
| 12/8/2017 | $48,250.81 | $3,300.00 |
| 12/12/2017 | $48,042.32 | $3,300.00 |
| 12/22/2017 |  | $3,500.00 |
| 12/22/2017 |  | $3,300.00 |
| 12/27/2017 | $48,082.50 | $3,300.00 |
| 1/4/2018 | $47,713.45 | $17,600.00 |
| 1/18/2018 |  | $26,400.00 |
| 1/30/2018 | $48,070.25 | $24,300.00 |
| 2/8/2018 |  | $8,300.00 |
| 2/13/2018 | $42,465.25 | $3,300.00 |
| 2/26/2018 | $48,070.25 | $16,500.00 |
| 3/1/2018 |  | $9,900.00 |
| 3/12/2018 |  | $7,000.00 |
| 3/19/2018 | $95,582.50 | $20,000.00 |
| 3/30/2018 | $77,650.00 | $40,000.00 |
| 4/6/2018 |  | $20,000.00 |
| 4/12/2018 | $46,848.00 | $10,000.00 |

| | | |
|---|---|---|
| 5/1/2018 | $90,000.00 | |
| 5/3/2018 | $52,820.00 | $20,000.00 |
| 5/11/2018 | $23,940.00 | $18,300.00 |
| 5/29/2018 | | $23,000.00 |
| 6/1/2018 | $75,067.50 | $1,500.00 |
| | $75,067.50 | |
| 6/14/2018 | $65,536.90 | $10,000.00 |
| 6/22/2018 | $84,925.00 | $30,000.00 |
| 7/13/2018 | $43,000.00 | $15,000.00 |
| 7/20/2018 | $98,050.00 | $20,000.00 |
| 7/26/2018 | | $4,600.00 |
| 8/3/2018 | $58,880.00 | $28,300.00 |
| 11/14/2018 | | |
| Total | $1,616,138.89 | $436,340.39 |

27.     These kickback and bribe payments were made by Defendants in furtherance of their fraudulent scheme to defraud CJ Freshway into making payments for products that Defendants did not intend to deliver and in fact did not deliver.

**Lim Admits to Defendants' Scheme and to Funneling Kickback and Bribe Payments through Shell Business Entities Owned by Him and His Mother**

28.     Attempting to hide the bribes and kickbacks he was paid by Defendants, Lim funneled the payments through two shell business entities, K9 Int'l Trading, Inc. and Kaldea, Inc., which were owned by Lim and his mother, Ki Soon Seo.

29.     When CJ Freshway began investigating the missing shipments, Lim denied receiving kickbacks and bribes and misrepresented the amount of funds he had received from Defendants to CJ Freshway's audit team.  Meanwhile, Lim's text messages with his mother confirmed the fraudulent scheme:

| |
|---|
| Lim:  "mom, my heart is trembling too much.  What am I going to do?" |
| Lim:  "this is the toughest time in my life" |
| Lim:  "I think I'm going to get caught." |

Lim:  "I got caught for what I pocketed."

Seo:  "If pocketing money is wrong, then perhaps it's wrong or bad"

Lim:  "I got caught.  What am I being caught for? What kind?"

Seo:  "Just answer with a smile.  Just say you don't know.  That it belongs to mom and dad."

Seo:  "Everything will turn out well as long as you don't talk a lot."

Seo:  "Don't touch the computer as soon as you get there."

Seo:  "Just say you don't know."

Lim:  "I think something may have been discovered." "They looked into my computer.  Something must have been discovered.  Whoa, really scared."

Lim:  "I got caught.  The corporate president asked me to speak with him."

Seo:  "Without any condition, just drag in Hwang and Kim."

Seo:  "Do not send me text messages because they are discoverable and they all look at the records."

Seo:  "They are trying to learn the flow.  Don't get persuaded.  You worked for the company.  That's what you need to plant in their head.  Bastards.  Tell them you're going to quit.  Unconditionally it's Hwang and Kim.  Just act like you know nothing, understand?"

Seo:  "Plant that in their head" or "brainwash the audit team"

Seo:  "Unconditionally it's Hwang and Kim.  Definitely act like you know nothing."

Lim:  "I don't know.  Because they know I have pocketed too much."

Seo:  "It's just that you receive a little for your effort."

Seo:  "Be consistent about not knowing"

Seo:  "Tell them you're not doing it.  Then that's telling about Hector."

Seo:  "Don't provide customers.  Bring it out with you.  The bastards really have to pay for it for real, Min Ho."

Seo:  "Never tell them about the route.  This is your weapon.  Understand, son? Just go through the pain somewhat."

Seo:  "It's cowardly to dodge but one must survive first.  Use your head."

Seo:  "Someone can get suspicious if they see your credit card.  Be careful with your wallet"

Seo:  "Tell them I got sick because of the worries form [sic] last night.  If at all possible, make it so that it doesn't lead to a litigation, son."

## Defendants Attempt to Cover Up Their Fraud

30.    Defendants also confirmed their participation in the fraudulent scheme and worked to cover it up.  In his text messages, Lim told Owenejazeri that he

1  would try to "make lower margin for CJ Freshway," and asked Owenejazeri to agree
2  on CJ Freshway's profit margins for Lim to strike a deal.  Owenejazeri returned
3  Lim's favor by paying Lim over $430,000.

4  31.  In a letter dated October 25, 2021, Meshquat's attorneys affirmatively
5  represented that "Meshquat has always been and remains ready, willing and able to
6  ship product to CJ F[reshway] as it has in the past" and that "Meshquat is committed
7  to fulfilling the POs."  These statements, too, were false and designed to cause CJ
8  Freshway to delay enforcement of its rights.  Only later, as CJ Freshway's
9  investigation continued, did CJ Freshway uncover the full extent of Defendants'
10 tortious activities.

## FIRST CAUSE OF ACTION
## FRAUD – INTENTIONAL MISREPRESENTATION
## [AGAINST ALL DEFENDANTS]

14 32.  CJ Freshway realleges, and incorporates by this reference, each and
15 every allegation set forth in paragraphs 1 through 31, inclusive.

16 33.  As explained above, Defendants made multiple misrepresentations to
17 CJ Freshway by fabricating fake bills of lading for P/O 1585 and P/O 1586, and
18 causing the fake bills of lading to be submitted to CJ Freshway for payments.  As CJ
19 Freshway discovered upon further investigation, the bills of lading that were
20 fabricated and sent to CJ Freshway included false and inaccurate information about
21 shipments of goods.

22 34.  Defendants knew that the statements in these documents regarding the
23 products to be shipped were false, and submitted these documents to CJ Freshway
24 intending that CJ Freshway rely upon them and make advance payments.  Indeed,
25 the shipping companies listed on the fake documents have since confirmed that the
26 documents do not reflect actual shipping information.

27 35.  In reasonable reliance on these documents and not knowing at the time
28 that they were fake, CJ Freshway made advance payments for the products listed

therein.

36.     As a direct and proximate result of Defendants' false statements and submissions of fake documents, CJ Freshway has been harmed. CJFW's damages include but are not limited to the payment of fees to Defendants; payment of attorneys' fees; interest on said fees; other costs to rectify Lim's mistakes; and other incidental and consequential damages.

37.     Defendants' false statements were a substantial factor in causing CJ Freshway's harm.

38.     Defendants' fraud as alleged herein constitutes a violation of California Civil Code section 1709 and 1710.

39.     Defendants' acts alleged above were willful, wanton, malicious, and oppressive, and were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages.

**SECOND CAUSE OF ACTION**

**FRAUD – CONCEALMENT**

**[AGAINST ALL DEFENDANTS]**

40.     CJ Freshway realleges, and incorporates by this reference, each and every allegation set forth in paragraphs 1 through 39, inclusive.

41.     Defendants also fraudulently concealed the fact that Defendants and Lim were engaged in an unlawful enterprise with the intent of defrauding CJ Freshway into making payments for products it would never receive.  Indeed, Defendants did not disclose that they were paying bribes and kickbacks to CJ Freshway's employee in order to obtain favorable treatment and to take possession of over $1 million in advance payments for products that Defendants would not deliver.  In total, Defendants' fraudulent scheme resulted in Meshquat receiving over $1.6 million from CJ Freshway, paying a portion to Lim, and pocketing the rest of CJ Freshway's money without ever shipping goods in return.

42.     Indeed, Defendants knowingly and purposely concealed these facts

PLAINTIFF CJ FRESHWAY AMERICA CORPORATION'S COMPLAINT AGAINST MESHQUAT
INTERNATIONAL TRADING COMPANY, LLC AND ALI OWNEJAZAYERI

from CJ Freshway in order to induce CJ Freshway to take certain actions, including, but not limited to the following actions:

- make payments based on the fake bills of ladings created and/or used by Defendants;
- make payments exceeding $1,000,000 to Meshquat without receiving any goods for the payments;
- make higher advance payments to Defendants that CJ Freshway would not have otherwise made for goods that it did not receive; and
- purchase goods from Meshquat at an inflated price.

43. CJ Freshway did not know of the facts concealed by Defendants, including that Defendants were paying kickbacks and bribes to Lim, and would have acted differently had such information been disclosed. Indeed, CJ Freshway would not have agreed to change the advance payment terms with respect to Defendants, nor would CJ Freshway have made advance payments under the Agreements.

44. As a direct and proximate result of Defendants' fraudulent conduct and concealment of material facts described above, CJ Freshway has suffered damages in an amount to be proved at trial. These damages include but are not limited to the payment of fees to Defendants; payment of attorneys' fees; interest on said fees; other costs to rectify Lim's mistakes; and other incidental and consequential damages.

45. Defendants' concealments were a substantial factor in causing CJ Freshway's harm.

46. Defendants' fraud as alleged herein constitutes a violation of California Civil Code section 1709 and 1710.

47. Defendants' acts alleged above were willful, wanton, malicious, and oppressive, and were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages.

**<u>THIRD CAUSE OF ACTION</u>**

**AIDING AND ABETTING FRAUD**

**[AGAINST ALL DEFENDANTS]**

48.     CJ Freshway realleges, and incorporates by this reference, each and every allegation set forth in paragraphs 1 through 47, inclusive.

49.     As alleged above, Defendants made multiple false statements to CJ Freshway and concealed the fact that Defendants were engaged in a fraudulent scheme to defraud CJ Freshway by paying bribes and kickbacks to CJ Freshway employee, Minho Lim.

50.     These false statements include:

- Defendants creating and submitting fake bills of lading and making false representations to CJ Freshway management and accounting to cause CJ Freshway to make multiple payments to Meshquat for goods that were not shipped, and later making further misrepresentations to conceal Lim's wrongdoings;

- Lim making false representations to CJ Freshway that shipments from Meshquat were en route when in fact Meshquat had never sent them, in order to place additional orders and cause additional payments to be made to Meshquat, and in exchange for bribes/kickbacks to be paid to Lim;

- Lim misrepresenting to the audit team the amount of monies Lim received from Meshquat; and

- Lim misrepresenting to CJ Freshway that making larger advance payments to Meshquat would result in larger profit for CJ Freshway, when in fact, the larger advance payments were designed to result in monies being paid to Meshquat for goods that were never delivered.

51.     CJ Freshway is informed and believes that at the time Defendants and Lim made the representations alleged above, they knew they were false.

52.     CJ Freshway is informed and believes that Defendants and Lim made the fraudulent representations in order to facilitate Defendants' fraudulent scheme and intended that CJ Freshway rely on the representations to make payments it would not have otherwise made.

53.     On information and belief, Defendants also concealed material facts including but not limited to the below from CJ Freshway:

- the fact that shipments had not arrived so that Lim could place additional orders and cause additional payments to be made to Meshquat;

- the fact that the bills of lading for P/O 1586 did not have the necessary information to facilitate the remaining payments; and

- the fact that Lim was paid kickbacks and bribes from Defendants, which he deposited into the bank accounts of his and his mother's business entities.

54.     Plaintiff is informed and believes, and thereupon alleges, that Defendants knew that CJ Freshway did not have access to this information and that CJ Freshway had no reasonable means of discovering such information.

55.     Had CJ Freshway been aware of the facts that Defendants and Lim concealed, CJ Freshway would not have taken any of the following actions:

- made payments based on the fake bills of ladings created and/or used by Defendants;

- made payments exceeding $1,000,000 to Meshquat without receiving any goods for the payments;

- increase the amount of advance payments to Meshquat; and

- purchase goods from Meshquat at an inflated price.

56.     On information and belief, Defendants knew or should have known that fraud was being committed by Meshquat, Ali and Lim, as described above.

57.     Defendants provided substantial assistance or encouragement to each

EAST\185745635.1

-14-

PLAINTIFF CJ FRESHWAY AMERICA CORPORATION'S COMPLAINT AGAINST MESHQUAT INTERNATIONAL TRADING COMPANY, LLC AND ALI OWNEJAZAYERI

other, as well as Lim, to effectuate the fraud, by paying kickbacks and bribes to Lim, submitting fraudulent shipping documents, and, on information and belief, coordinating with Lim to make false statements to CJ Freshway regarding Owenejazeri's relationship with Lim.  Indeed, as the principal in control of Meshquat, Owenejazeri substantially assisted and directed the fraudulent actions of Meshquat, as well as substantially assisting Lim in making misrepresentations and concealing information from CJ Freshway.

58.    Defendants' conduct was a substantial factor in causing harm to Plaintiff in that Defendants not only assisted and encouraged Lim's fraud, but Defendants remain in possession of over $1 million of ill-gotten gains which CJ Freshway paid to Defendants in reliance on Lim's and Defendants' false statements and omissions.

59.    Defendants' intentional and willful conduct was fraudulent, malicious, and oppressive in nature, and constituted a conscious disregard for the rights of Plaintiff so as to justify an award of exemplary damages.

## FOURTH CAUSE OF ACTION

## VIOLATION OF 18 U.S.C. § 1962(c)

## [AGAINST ALL DEFENDANTS]

60.    CJ Freshway realleges, and incorporates by this reference, each and every allegation set forth in paragraphs 1 through 59, inclusive.

61.    As described above, Defendants formed an enterprise in fact with Lim which was designed to defraud Plaintiff and commit racketeering activity as defined by 18 U.S.C. § 1961.

62.    Over the course of at least four months, Defendants directed and participated in the conduct of the enterprise and engaged in a pattern of racketeering activity by submitting false invoices and making false representations to CJ Freshway through the mail and wires in violation of 18 U.S.C. §§ 1341 and 1343.

63.    Defendants made at least 33 bribe and/or kickback payments to Lim

1  totaling over $436,000 in order to effectuate their scheme.  Meshquat and Lim also

2  fraudulently arranged to increase the advance payment amounts due to Meshquat,

3  resulting in the advance payments to Meshquat listed above for products that

4  Meshquat did not deliver.

5      64.   Defendants' pattern of racketeering activity took place through

6  interstate commerce, with the false orders and documents being sent from

7  Massachusetts to California and for product to be shipped across state lines and

8  internationally.

9      65.   As a direct and proximate result of Defendants' pattern of racketeering

10 activity, Plaintiff has suffered injury to its business and property in an amount to be

11 proven at trial and believed to exceed $1,000,000.

12     66.   Pursuant to 18 U.S.C. § 1964(c), CJ Freshway is entitled to three times

13 the amount of its actual damages in an amount to be proven at trial, costs of suit, and

14 its reasonable attorneys' fees.

15 **FIFTH CAUSE OF ACTION**

16 **BREACH OF CONTRACT**

17 **[AGAINST ALL DEFENDANTS]**

18     67.   CJ Freshway alleges and incorporates by reference the allegations

19 contained in paragraphs 1 through 66 above.

20     68.   CJ Freshway and Defendants entered into multiple purchase

21 agreements that were governed by terms and conditions agreed upon by the Parties,

22 which stated that "SELLER and BUYER hereby agree that in the absence of a

23 separate formal written contract, the following terms and conditions ("T&C") shall

24 govern the Purchase Order ("PO") between SELLER and BUYER for the purchase

25 of the products ("Products") specified in the face of the PO.  If there is a separate

26 written contract, then the terms of that contract shall govern the transaction and

27 relationship of the parties."

28     69.   Section 4 of the T&C provided as follows: "The Products shall be

delivered in accordance with the delivery term as provided in this PO (as per INCOTERMS 2010 or the latest revision thereof) and title and risk of loss shall pass in accordance with such term. Notwithstanding anything to the contrary, BUYER upon initial inspection shall have the right to reject the Products in case any issues with the quality of the Products."

70.     Section 5 of the T&C provided as follows: "Time is of the essence in the delivery of the Products.  SELLER shall immediately notify BUYER of any possible delays. Notwithstanding the delivery terms or anything to the contrary, BUYER may, in its sole discretion, cancel the PO without penalty, in addition to any other remedies available to BUYER at law or in equity, for the following delays: (i) for the perishable goods, if the estimated delivery date (to the final delivery location as stated in the Order) is expected to be or is delayed more than five (5) days for any reason (including excusable delays due to a Force Majeure event); or (ii) for all other goods, if the estimated delivery date (to the final delivery location as stated in the Order) is expected to be or is delayed more than thirty (30) days for any reason (including excusable delays due to a Force Majeure event)."

71.     Meshquat entered into agreements as to the following POs, all of which were subject to the above terms and conditions, when it accepted the advance payments and also when it ratified the POs via email on September 14 and 28 of 2018[1], and further ratified the POs through its counsel in its October 25, 2018 letter by stating that it would fulfill the shipments per the Agreements:

   a.   **PO No. 1559** -- CJ Freshway made an advance payment on 3/19/2018 in the amount of $95,583 and Meshquat accepted the payment.  By the terms of PO No. 1559, the shipment was to be made no later than 4/10/2018.

---

[1] Ownejazayeri expressed in his September 28, 2018 email that its intentions are to "eliminate outstanding POs as quickly as possible" and that he would "clean this matter very quickly."

b.  **PO No. 1560** -- CJ Freshway made an advance payment on 3/19/2018 in the amount of $95,088 and Meshquat accepted the payment.  By the terms of PO No. 1560 the shipment was to be made no later than 4/25/2018.

c.  **PO No. 1585** -- CJ Freshway made an advance payment on 4/5/2018 in the amount of $ 90,000, and a second payment of $75,068 was made on 6/1/2018 and Meshquat accepted the payments.  But CJ Freshway only received $94,487 worth of goods and Meshquat has been owing CJ Freshway a balance of $70,581 for the unshipped goods.

d.  **PO No. 1586** -- CJ Freshway made a payment in full on 5/1/2018 in the amount of $165,068 (advance payment of $90,000 on 5/1/2018 + remaining payment of $75,068 on 6/1/2018) and Meshquat accepted the payments.  By the terms of PO No. 1586 the shipment was to be made no later than 4/24/2018.

e.  **PO No. 1651** -- CJ Freshway made an advance payment on 6/22/2018 in the amount of $ 92,500 and Meshquat accepted the payment.  By the terms of PO No. 1651 the shipment was to be made no later than 6/22/2018.

f.  **PO No. 1652** -- CJ Freshway made an advance payment on 7/13/2018 in the amount of $92,500 and Meshquat accepted the payment.  By the terms of PO No. 1652 the shipment was to be made no later than 6/22/2018.

g.  **PO No. 1649** -- CJ Freshway made an advance payment on 7/13/2018 in the amount of $43,000 and Meshquat accepted the payment.  By the terms of PO No. 1649 the shipment was to be made no later than 7/25/2018.

h.   **PO No. 1671** -- CJ Freshway made an advance payment on 7/20/2018 in the amount of $98,050 and Meshquat accepted the payment.  By the terms of PO No. 1671the shipment was to be made no later than 8/10/2018.

i.   **PO No. 1672** -- CJ Freshway made an advance payment on 8/1/2018 in the amount of $66,600 and Meshquat accepted the payment.  By the terms of PO No. 1672 the shipment was to be made no later than 8/10/2018.

j.   **PO No. 1691** -- CJ Freshway made an advance payment on 8/15/2018 in the amount of $86,850 and Meshquat accepted the payment.  By the terms of PO No. 1691 the shipment was to be made no later than 8/17/2018.

k.   **PO No. 1653** -- CJ Freshway made an advance payment on 8/1/2018 in the amount of $92,500 and Meshquat accepted the payment.  By the terms of PO No. 1653 the shipment was to be made no later than 6/22/2018.

l.   **PO No. 1654** -- CJ Freshway made an advance payment on 8/15/2018 in the amount of $92,500 and Meshquat accepted the payment.  By the terms of PO No. 1654 the shipment was to be made no later than 6/22/2018.

72.   The Purchase Orders constitute valid and binding contracts between CJ Freshway and Meshquat.

73.   At all relevant times, CJ Freshway has performed all required conditions, terms and promises in accordance with the Purchase Orders, except as may have been excused, prevented, or frustrated by the acts, breaches, estoppel or waiver of Defendants.

74.   Defendants have breached their obligations under the Purchase Orders, referenced above by failing to fulfill the obligations it assumed under the Purchase

Orders.

75.     Although CJ Freshway has demanded return of the advance payments in full for unshipped goods pertaining to the Purchase Orders, Defendants have refused to return the advance payments.

76.     CJ Freshway has suffered damages and continues to suffer damages as a result of Defendants' breach of their obligations under the Purchase Orders and failure to refund advance payments for which no goods were delivered. Without limitation, no less than $1,092,070 has already been incurred in payments to Defendants.

77.     As a direct, proximate, and foreseeable consequence of Defendants' breach of the Agreements, CJ Freshway has suffered damages in the principal sum of at least $1,092,070, plus interest and costs of suit incurred herein, and all other sums according to proof.

## SIXTH CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
## [AGAINST ALL DEFENDANTS]

78.     CJ Freshway realleges, and incorporates by this reference, each and every allegation set forth in paragraphs 1 through 77, inclusive.

79.     Pursuant to California law, the Agreements entered into between CJ Freshway and Meshquat contained an implied covenant of good faith and fair dealing. Accordingly, Defendants owed CJ Freshway a duty not to act in a manner that would deprive CJ Freshway of the benefits it is entitled to under those Agreements, nor do anything contrary to the reasonable expectations of CJ Freshway.

80.      By failing to pay or ship any products in accordance with the Purchase Orders and refusing to return the advance payments made therefor—the balance of at least $1,092,070 due and owing—under the Agreement, Defendants breached the covenant of good faith and fair dealing.

81.    As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, CJ Freshway has sustained damages totaling at least $1,092,070, the balance due and owing under the Agreements, plus appropriate interest.

**SEVENTH CAUSE OF ACTION**

**CONVERSION**

**[AGAINST ALL DEFENDANTS]**

82.    CJ Freshway realleges, and incorporates by this reference, each and every allegation set forth in paragraphs 1 through 81, inclusive.

83.    CJ Freshway is, and at all times herein alleged was, entitled to immediate possession of the monies Defendants received upon its demand for the return of the advance payments after Defendant breached the Agreements.

84.    CJ Freshway is informed and believes that Defendants are in wrongful possession of the advance payments and have converted such property to their own use by refusing to return the advance payments that were made for the seafood products that Defendants never shipped.  As alleged above, Defendants represented as late as October 25, 2018 that they would in fact ship products covered by the POs and for which CJ Freshway advanced payment.  Since that time, however, Defendants have failed and refused to do so and have also failed and refused to return CJ Frewshway's advance payments.

85.    CJ Freshway is informed and believes, and on that basis alleges, that Defendants have converted the advance payments, with a total value of at least $1,092,070, to their own use and benefit.

86.    CJ Freshway is entitled to judgment for the wrongful detention of the advance payments the amounts of which are equal to the advance payments set forth above.

87.    The Defendants' acts alleged above were willful, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages.

88.     An injunction may be necessary to prevent Defendants from continuing to engage in the practices alleged above, which constitute conversion, and from dissipating any funds obtained as a result of such conversion.

89.     CJ Freshway is therefore entitled to an injunction temporarily, preliminarily, and permanently enjoining Defendants and anyone acting in concert with or on behalf of them, from transferring any assets pending the resolution of this action.

### EIGHTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### [AGAINST ALL DEFENDANTS]

90.     CJ Freshway realleges, and incorporates by this reference, each and every allegation set forth in paragraphs 1 through 89, inclusive.

91.     At all times while Defendants were engaged in the conduct described above and incorporated herein, Defendants received the benefit of the advance payments made by CJ Freshway for the seafood products that were never shipped. Defendants refused and continue to refuse to return said sum to CJ Freshway.

92.     Defendants were unjustly enriched by receiving and keeping the advance payments from CJ Freshway for the seafood products that were never shipped. Therefore, Defendants have benefitted at CJ Freshway's expense in the total amount of $1,092,070.

93.     The circumstances are such that it would be inequitable for Defendants to retain the benefits without paying the value thereof, at least $1,092,070, to CJ Freshway.

### NINTH CAUSE OF ACTION
### VIOLATION OF BUSINESS AND PROFESSIONS CODE 17200
### [AGAINST ALL DEFENDANTS]

94.     CJ Freshway realleges, and incorporates by this reference, each and every allegation set forth in paragraphs 1 through 93, inclusive.

95.     Defendants have committed acts of unfair business practices, as defined by California Business and Professions Code Section 17200 *et seq*.  Defendants' unfair business practices are alleged more fully above.

96.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

97.     All Defendants engaged in unfair competition or unlawful, unfair, or fraudulent business practices in violation of the Unfair Competition law when they engaged in acts which include but are not limited to converting the advance payments, with a total value of $1,092,070, to their own use and benefit, that were made for the seafood products Defendants never shipped.

98.     Defendants were also unjustly enriched by refusing to return the advance payments made for the seafood products that Defendants never shipped.

99.     Defendants' actions constitute an ongoing pattern of unlawful and/or unfair business practices and conduct.

100.    CJ Freshway hereby requests for an order enjoining and prohibiting Defendants from continuing their bad acts and practices.

101.    CJ Freshway has been harmed, and Defendants have been unjustly enriched, by Defendants' actions in an amount subject to proof at trial but totaling at least $1,092,070.

## TENTH CAUSE OF ACTION
### ACCOUNT STATED
### [AGAINST ALL DEFENDANTS]

102.    CJ Freshway realleges, and incorporates by this reference, each and every allegation set forth in paragraphs 1 through 101, inclusive.

103.    There were accounts stated by and between CJ Freshway and Defendants, wherein and whereby the sum of at least $1,092,070 was found to be due to CJ Freshway, which said sum Defendants are obligated to pay.

EAST\185745635.1

-23-

104. The whole of such sum has not been paid, although CJ Freshway has demanded payment and there is now due, owing, and unpaid from Defendants the sum of at least $1,092,070 in advance payments plus prejudgment interest to be assessed.

## ELEVENTH CAUSE OF ACTION
## OPEN BOOK ACCOUNT
## [AGAINST ALL DEFENDANTS]

105. CJ Freshway realleges, and incorporates by this reference, each and every allegation set forth in paragraphs 1 through 104, inclusive.

106. Within the last four years, Defendants became indebted to CJ Freshway on an open book account in the total principal sum of at least $1,092,070 for the unreturned advance payments.

107. CJ Freshway has made multiple demands to Defendants to pay the balance of at least $1,092,070 that is due and owing. Defendants failed, and continue to fail, to pay the balance despite CJ Freshway's demands. CJ Freshway has incurred attorneys' fees in connection with this matter, in an amount to be determined at trial, which fees CJ Freshway is entitled to recover from Defendants pursuant to California Civil Code section 1717.5.

## TWELFTH CAUSE OF ACTION
## VIOLATION OF CAL. PENAL CODE 496(c)
## [AGAINST ALL DEFENDANTS]

108. CJ Freshway realleges, and incorporates by this reference, each and every allegation set forth in paragraphs 1 through 107, inclusive.

109. Defendants are fully aware that the monies Defendants and Lim caused CJ Freshway to pay Defendants through their fraudulent scheme are in the possession of Defendants. Defendants received these monies through bribes and kickbacks to Lim. Nevertheless, Defendants, knowing and having been reminded of the fraudulent origin of the funds, knowingly continue to withhold such funds from

CJ Freshway in violation of California Penal Code Section 496(c).

110.   CJ Freshway has been injured by Defendants in violation of California Penal Code Section 496(c). As a direct and proximate result of Defendants' refusal to return the fraudulently obtained funds, CJ Freshway has suffered damages in the amount of at least $1,092,070 plus accrued interest, attorneys' fees and costs, and seeks such damages according to proof at trial.

111.   Pursuant to California Penal Code section 496(c), CJ Freshway is entitled to three times the amount of its actual damages in an amount to be proven at trial, costs of suit, and its reasonable attorneys' fees.

**WHEREFORE,** Plaintiff CJ Freshway prays for relief as follows:

1.    For damages according to proof at the time of trial;

2.    For restitution according to proof;

3.    For legal interest on said sums;

4.    Attorneys' fees and costs to the extent permitted by law;

5.    For preliminary and permanent injunctive relief, enjoining and restricting Defendants and anyone acting in concert with or on behalf of them, from transferring any assets pending the resolution of this action;

6.    For treble damages pursuant to 18 U.S.C. § 1964 and Cal. Pen. Code § 496(c);

7.    For exemplary damages according to proof; and

8.    For such other and further relief as the Court deems just and proper against all Defendants.

Plaintiff hereby demands trial by jury.

1 | Dated:  October 19, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER LLP (US)


By:/s/ John S. Gibson
    JOHN S. GIBSON

    Attorneys for Plaintiff
    CJ FRESHWAY AMERICA
    CORPORATION

PLAINTIFF CJ FRESHWAY AMERICA CORPORATION'S COMPLAINT AGAINST MESHQUAT
INTERNATIONAL TRADING COMPANY, LLC AND ALI OWNEJAZAYERI